UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :
       - v.-                             :
                                         :
JOHN MELICHAREK,                         :          S1 07 Cr. 907 (SAS)
       a/k/a "Rocky,"                    :
                                         :
                 Defendant.              :
                                         :
------------------------------------------------------------x


# GOVERNMENT'S MOTION FOR SENTENCING OF DEFENDANT JOHN MELICHAREK


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States
      of America

ELIE HONIG
LISA ZORNBERG
Assistant United States Attorneys

    - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,              :
                                       :
        - v.-                          :
                                       :
JOHN MELICHAREK,                       :      S1 07 Cr. 907 (SAS)
    a/k/a "Rocky,"                     :
                                       :
           Defendant.                  :
                                       :
------------------------------------------------------------x
```

**GOVERNMENT'S MOTION FOR SENTENCING OF
DEFENDANT JOHN MELICHAREK**

The Government respectfully submits this Motion in advance of the sentencing of defendant John Melicharek, which is scheduled for September 17, 2008. As discussed herein, Melicharek should be sentenced within the stipulated Guidelines range of 147 to 168 months' imprisonment.

**I.      Melicharek's Offense Conduct**

Melicharek has pled guilty to participating in three separate violent crimes.

**A.      Count Three: September 28, 2003 Home Invasion Robbery Conspiracy**

Melicharek pled guilty to participating in a Hobbs Act robbery conspiracy, in violation of Title 18, United States Code, Section 1951, for his role in orchestrating a September 28, 2003 home invasion robbery in Morris County, New Jersey. In his written plea agreement with the Government (a copy of which is attached to this Motion as Exhibit A), Melicharek stipulated that he was a manager or supervisor of the criminal activity, which involved five or more participants; that a victim was physically restrained during the robbery; that a victim suffered serious bodily injury during the robbery; and that the loss amount exceeded $250,000. (Plea Agmt. at 3).

In or around September 2003, Genovese Family associate Ed Cobb approached Melicharek – who had introduced Cobb into the crew of Genovese Family Capo Angelo Prisco – about the possibility of committing a home invasion robbery targeting a man named John Southard. (PSR ¶ 30). Cobb told Melicharek that Southard had approximately $100,000 cash from a recent business deal inside his home. (PSR ¶ 29). Melicharek and Cobb then began formulating a plan to rob Southard. (PSR ¶ 30). Melicharek assembled a break-in team, including three Albanians – co-defendants Dardian Celaj, Ened Gjelaj, and Gjelosh Krasniqi – who Melicharek knew to be experienced home invaders. (PSR ¶ 30). Melicharek also recruited co-defendant Dominick Memoli, who had recently been released from jail, to commit the home invasion. (PSR ¶ 30).

In the days leading up to the robbery, Melicharek met several times with Cobb and the members of the break-in team to plan the robbery. (PSR ¶ 31). Melicharek and Cobb decided that they could not enter the home themselves, for fear of being recognized by the victims or other eyewitnesses. (PSR ¶ 31).

In the early morning hours of September 28, 2003, Melicharek's break-in team broke into Southard's home to rob Southard, who was asleep inside the home with his family. During the robbery, the members of the break-in team – several of whom were carrying guns – bound and handcuffed Southard, Southard's wife, and Southard's housekeeper. Southard's three-year old son was not bound, but was ordered to stay under the bed covers with his mother, who was bound. (PSR ¶ 33). The members of the break-in team then used a razor blade to prod Southard to walk to his safe. (PSR ¶ 33). When Southard initially hesitated to open the safe, Memoli threatened to cut up Southard's young son. (PSR ¶ 33). Southard then opened the safe, whereupon he was promptly pistol-whipped in the face by Memoli. (PSR ¶ 33). As a result of that attack, Southard was knocked

2

unconscious and sustained a broken bone in his face, near his eye, which resulted in permanent disfigurement to Southard's face. (PSR ¶ 33).

The morning after the robbery, Melicharek and Cobb met with members of the break-in team to divide their spoils. (PSR ¶ 34). Melicharek kept a portion of the stolen cash, and also collected cash to pay to Prisco – Melicharek's Genovese Family Captain – as "tribute." (PSR ¶ 34). Melicharek also helped to coordinate the sale of a valuable coin collection that had been stolen from Southard. (PSR ¶ 34).

Three of the victims of this robbery – John Southard, Claudia Cardona (Southard's wife, and the mother of Southard's young son), and Anna Burke (Southard's housekeeper, who was in the home the night of the robbery) have elected to submit written victim statements to this Court. Those statements are attached as Exhibits B, C, and D to this Motion. Southard recounts how his family was terrorized, and how he was physically assaulted, during the robbery. All three victims discuss the lasting impact of the robbery and attack on the victims, including the Southards' young son, who was three years old at the time of the robbery. (Exhs. B, C, D).

**B.    Count Seven: Use And Possession of Firearms In Furtherance of October 19, 2003 Home Invasion Robbery**

Melicharek also pled guilty to a violation of Title 18, United States Code, Section 924(c) for providing guns to various co-defendants who used those guns to commit another home invasion robbery on October 19, 2003, in Orange County New York.

Less than one month after the robbery of Southard, Melicharek and many of the same co-conspirators planned and attempted a similar home invasion in Orange County, New York. Melicharek learned from Michael Visconti – another Genovese Family associate in Prisco's crew

– about an opportunity to rob the home of Paul Teutul. (PSR ¶ 36). Teutul was the owner of a motorcycle business called Orange County Choppers, and was well known at the time because he was the star of a popular television reality show. (PSR ¶ 35). As a result of this public exposure, Teutul's profile, and business, grew rapidly. (PSR ¶ 35).

Visconti told Melicharek that Teutul kept hundreds of thousands of dollars in cash from the business inside his home. (PSR ¶ 36). Melicharek then reached out to many of the same individuals he had recruited to rob Southard, including Celaj, Gjelaj, and Krasniqi. (PSR ¶ 36). Those individuals agreed to rob Teutul. (PSR ¶ 36). On the night of the robbery, Melicharek drove the members of the break-in team – who were wearing masks and gloves, and who were carrying guns – to Teutul's home. (PSR ¶¶ 37-38). Melicharek waited outside the home in a getaway car as the members of the break-in team entered the home. (PSR ¶ 38). Once inside, two of the members of the break-in team found Robert Rosenberg – the brother of Teutul's then-girlfriend, who was house-sitting while Teutul and his girlfriend were out of town – asleep in a bed. (PSR ¶ 38). The members of the break-in team attacked Rosenberg, hitting him with fists and guns, until they managed to bind and gag Rosenberg. (PSR ¶ 38). As a result of this assault, Rosenberg – who was then approximately 60 years old – sustained a bruised heart and serious internal bleeding, which led to Rosenberg's hospitalization for six days. (PSR ¶ 38).

While the members of the break-in team were inside the home, Melicharek was pulled over by the New York State Police as he waited outside in the getaway car. (PSR ¶ 39). After Melicharek lied to the police about why he was in the car, the police let Melicharek go. (PSR ¶ 39). That traffic stop frightened Melicharek enough that he fled the scene, abandoning the break-in team at the home. (PSR ¶ 39). Eventually, co-defendant Louis Pipolo arrived at the home to pick up the

4

break-in team and to collect the guns they had used. (PSR ¶ 39).

The victim of this robbery, Mr. Rosenberg, has elected to submit to this Court his prior witness statement to the FBI, in lieu of making a personal appearance in Court. A copy of that victim statement is attached as Exhibit E to this letter. Mr. Rosenberg describes in his statement how he was awoken at night by masked men, how he was bound, gagged, and beaten, and the injuries he suffered as a result of the attack.

### C.   Count One: Extortion Of Mulberry Street Contractor, 2004 To 2005

Melicharek also pled guilty to participating in a conspiracy to commit Hobbs Act extortion of a Manhattan-based contractor in 2004 and 2005, in violation of Title 18, United States Code, Section 1951. In his plea agreement, Melicharek stipulated that the offense involved explicit or implied threat of bodily injury, and that the amount demanded exceeded $50,000. (Plea Agmt. at 3).

This Court is familiar with the facts of the extortion based on the July 2008 trial of Angelo Nicosia, which resulted in Nicosia's conviction by a jury. In sum, Melicharek learned from Nicosia in 2004 about the opportunity to extort a Manhattan-based contractor named Steven Galise for tens of thousands of dollars. Melicharek and several other individuals then accompanied Nicosia to visit Galise at Galise's job site. (Tr. 180).[1] During that visit, Nicosia said that Galise owed $60,000 for work that Nicosia had done for Galise in the mid-1990s. (Tr. 181-82). During that meeting, Nicosia told Galise that the debt was not being collected as a business matter, and Galise understood that Nicosia, Melicharek, and the others had come to him on behalf of the Genovese

---

[1] "Tr." refers to the transcript of the Nicosia trial, relevant portions of which are attached as Exhibit F to this Motion. In his testimony, Galise referred to Melicharek as "John."

Family. (Tr. 183).

During the following days and weeks, Melicharek and Nicosia called and visited Galise, continually demanding money. (Tr. 184-86). A few weeks later, Melicharek, Nicosia, and co-defendant Michael Iuni came to Galise's work site. Melicharek and the others then drove Galise to a coffee shop. (Tr. 186). At the coffee shop, Iuni "frisked" Galise, roughly patting him down while looking for a wire. (Tr. 189). Melicharek then told Galise, "Look, that's it. You've got to take care of this. I want money. You know, I know you're a family man. We know where your family lives." (Tr. 190). Iuni then told Galise to put his hand on the table, threatened to cut off Galise's finger, and asked Melicharek if he should stab Galise. (Tr. 190). Melicharek then told Galise he wanted the first $10,000 in cash by that Friday. (Tr. 191). Galise, who was terrified for his own safety and his family's safety, proceeded to pay $50,000, all in cash, by delivering numerous cash payments to Melicharek. (Tr. 193-95).

Mr. Galise has elected to rely on his trial testimony in lieu of making a separate victim-impact statement to this Court. A copy of Mr. Galise's complete testimony is attached as Exhibit F to this letter.

## II.    Melicharek's Guilty Plea

On June 20, 2008, Melicharek pled guilty to Counts One, Three, and Seven of the Indictment, pursuant to a plea agreement with the Government. As discussed in more detail above and in the Pre-Sentence Report, the parties stipulated to various sentencing enhancements – for Melicharek's leadership role, injury to victims, and loss amounts, among other things – that result in a stipulated Guidelines range of 147 to 168 months. The parties also stipulated that:

>neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek such a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Probation Department consider such a departure or adjustment, or suggest that the Court *sua sponte* consider such a departure or adjustment.
>
>The parties further agree that a sentence within the Stipulated Guidelines range would constitute a reasonable sentence in light of all of the factors set forth in Title 18, United States Code, Section 3553(a). In addition, neither party will seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Department consider a sentence outside of the Stipulated Guidelines Range, or suggest that the Court *sua sponte* consider a sentence outside of the Stipulated Guidelines Range.

Thus, the parties have agreed that a sentence within the range of 147 to 168 months is appropriate, and neither party is seeking a sentence above or below that range.

## III.    Restitution

The parties have stipulated in the plea agreement that restitution is due to the victims of Melicharek's offenses. (Plea Agmt. at 1-2 ("In addition to the foregoing, the Court must order restitution to any identifiable victim(s) of the offense in accordance with Sections 3663, 3663(a), and 3664 of Title 18, United States Code ")). The restitution due to the victims is as follows:

### A.    John Southard

Southard and his family were the victims of the September 2003 home invasion robbery in Morris County, New Jersey. Southard and his family have indicated to the Government and the Probation Office that they do not wish to expose themselves and their finances to detailed examination for purposes of assessing restitution. (PSR ¶ 48). At a minimum, and even without a detailed review of the Southards' finances, the record establishes the following losses: at least $100,000 in cash; a coin collection that was fenced for $27,000 but was worth several times more;

jewelry valued at more than $100,000; and Southard's firearm collection, including several antiques. (PSR ¶ 48). Thus, even using figures most favorable to Melicharek – for example, without attempting to quantify the true value of the stolen coin collection – the total restitution due to the Southards amounts to $227,000.

### B.   John Robert Rosenberg

Rosenberg was the victim of the October 2003 home invasion robbery in Orange County, New York. By its prior letter of August 11, 2008, the Government notified the Court and defense counsel that Rosenberg incurred a total of $34,368.79 in medical costs after he was attacked during the robbery. Of that amount, $32,065.45 was paid by the New York State Crime Victims Board. The remaining $2,303.34 was paid by Mr. Rosenberg out of his own pocket. The Government seeks restitution in the entire amount of $34,368.79, made payable to the respective paying parties.

### C.   Steven Galise

Galise was the victim of the extortion committed by Melicharek and others in 2004 and 2005. Galise's testimony during the July 2008 trial of Nicosia established that he was extorted by Melicharek and others for a total of $50,000. The Government therefore seeks restitution in that amount to Galise.

### IV.   Conclusion

Melicharek does not contest the facts of his offenses of conviction as set forth in the Presentence Report. Melicharek and the Government have agreed that a sentence within the stipulated Guidelines range of 147 to 168 months is reasonable, and both parties have agreed not to

ask the Court to impose a sentence above or below that range. For these reasons, Melicharek should be sentenced within the stipulated Guidelines range of 147 to 168 months' imprisonment.

Dated:   New York, New York
         September 4, 2008

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney for the
                                    Southern District of New York,
                                    Attorney for the United States
                                    of America


                              By:_____
                                    Elie Honig / Lisa Zornberg
                                    Assistant United States Attorney
                                    Tel.: (212) 637-2474 / 2720

## CERTIFICATE OF SERVICE

ELIE HONIG deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

That on September 4, 2008, he served a copy of the attached Government's Motion for Sentencing of Defendant John Melicharek by ECF and Fed Ex on:

> Barry Levin, Esq.
> 600 Old Country Road, Suite 333
> Garden City, NY 11530
> Phone:  (516) 222-4500

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. Section 1746.


Dated:    New York, New York
          September 4, 2008


_____
ELIE HONIG